J-A33028-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

A.A.L.

Appellant

v.

S.J.L. AND M.L.A.

IN THE SUPERIOR COURT OF
PENNSYLVANIA

No. 603 WDA 2016

Appeal from the Order Dated March 30, 2016
In the Court of Common Pleas of Cambria County
Civil Division at No(s): 2015-450

BEFORE: LAZARUS, J., SOLANO, J., and STRASSBURGER, J.[*]

MEMORANDUM BY SOLANO, J.:                     **FILED APRIL 10, 2017**

*Pro se* Appellant, A.A.L. ("Maternal Grandmother"), appeals from the order dismissing her petition for special relief because she lacked standing. On appeal, she contends, among other things, that the court erred by preventing her from presenting evidence supporting her petition. We affirm.

On January 29, 2015, Maternal Grandmother filed a *pro se* complaint seeking primary physical custody of S.L. (born February 2012) ("Child"), from S.J.L. ("Father") and M.L.A. ("Mother").[1] Maternal Grandmother's complaint was a form complaint intended to be completed by *pro se*

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] Mother is not a party to this appeal. It does not appear Father and Mother married.

grandparents or third parties. Compl., 1/29/15. Paragraph 10 of the form complaint that she filed reads as follows:

> 10. (a) If the plaintiff is a grandparent who is seeking physical and/or legal custody pursuant to 23 Pa.C.S. § 5324, you must plead facts establishing standing pursuant to 23 Pa.C.S. [§] 5324(3)
>
> *See attached: Petition for Emergency Custody_____*
>
> (b) If the plaintiff is a grandparent or great-grandparent who is seeking partial physical custody or supervised physical custody pursuant to 23 Pa. C.S. §5325, you must plead facts establishing standing pursuant to §5325.
>
> _____

***Id.*** at ¶ 10 (italics reflect Maternal Grandmother's handwritten insert). Maternal Grandmother did not write anything on the line below paragraph (b).

The trial court set forth the facts and subsequent procedural history as follows:

> On the same day [as she filed her custody complaint], Maternal Grandmother filed a "Petition for Emergency Custody Order" seeking immediate temporary legal and physical custody of the [C]hild. Maternal Grandmother alleged various instances of the [C]hild's mistreatment, as well as the parents' alleged mental health, alcohol abuse, and substance abuse.
>
> Following a Hearing on Maternal Grandmother's "Petition for Emergency Custody Order," the trial court issued an Opinion and Interim Order dated March 19, 2015, stating:
>
> > [Father and Mother] having failed a court-administered drug test [on March 19, 2015], it is hereby ORDERED and DECREED that temporary

physical custody of [the Child] is hereby vested in [Maternal Grandmother] pending further Order. [Maternal Grandmother, Mother, and Father] shall have shared legal custody of the minor [C]hild. Cambria County Children and Youth Services ["CYS"] is DIRECTED to investigate this matter and to determine if the [C]hild is dependent under the Child Protective Services Act. This Order is without prejudice for Children and Youth Services to make another Order for custody after full investigation.

Interim Order dated Mar. 19, 2015, pgs. 1-2.

On April 20, 2015, Hearing Officer Paul Eckenrode conducted a Custody Hearing and recommended that the parties share legal custody, that Maternal Grandmother maintain primary physical custody, and that Mother and Father have partial physical custody. The trial court executed the Hearing Officer's Recommended Interim Order on April 24, 2015.

Trial Ct. Op., 6/29/16, at 1-3 (some citations omitted). Apparently, no party challenged Maternal Grandmother's standing to bring the January 29, 2015 custody action.

Meanwhile, CYS continued its investigation. Upon completing that investigation, the trial court held an Initial Adjudication hearing on June 30, 2015, during which it heard testimony from Maternal Grandmother, the family's CYS caseworker, a licensed psychologist who evaluated Father and Maternal Grandmother, and a doctor who conducted a psychological evaluation of S.L. At the conclusion of the hearing, the court determined that S.L. was not dependent, and it therefore returned custody to Father. Thus, Maternal Grandmother had custody of the child from March 19, 2015 until June 30, 2015, a period of slightly more than three months.

On July 27, 2015, Mother and Maternal Grandmother filed a joint appeal from the June 30, 2015 order. On September 2, 2015, the court issued a Rule 1925(a) opinion in which it explained that "the evidence established that Father was ready, willing, and able to take custody of S.L." and that, "after conducting an investigation into him CYS believed he was able to provide adequate care for S.L., that it was in her best interests to be placed in Father's care, and that no services were required." Trial Ct. Op., No. CP-11-DP-0000084-2015, 9/2/2015, at 10. Because a parent was available to take custody, the court believed placement with Maternal Grandmother was not an option. *See id.* at 10-11. However, the court also recounted concerns regarding Maternal Grandmother's mental health and her failure to treat it. *See id.* at 5-6.

On November 23, 2015, this Court dismissed the appeal because Mother and Maternal Grandmother, acting *pro se*, failed to comply with this Court's order to file a brief and reproduced record. Order, No. 1232 WDA 2015, 11/23/15. Mother and Maternal Grandmother did not seek leave to appeal to the Pennsylvania Supreme Court.

On January 7, 2016, Maternal Grandmother filed a *pro se* Petition for Special Relief under Pa.R.C.P. 1915.13, which sought clarification of Child's

- 4 -

"custody and visitation provisions." Pet., 1/7/16, at 1-2.[2] Maternal Grandmother's petition noted that it "appears," Mother has "abandoned any personal formal legal efforts to acquire visitation privileges for partial custody of any kind for this child." *Id.* at 2 (unpaginated). Maternal Grandmother requested that the trial court "schedule a hearing to determine custody and visitation provisions" so Child could "be permitted contact with all family members." *Id.* On February 25, 2016, the trial court ordered a hearing; the order did not impose any limitations on the introduction of evidence or testimony.

The hearing was held on March 28, 2016. During it, Father's counsel made an oral "motion that there is a lack of standing in this matter, under the fact [that Maternal Grandmother] does not have standing to bring this

---

[2] Rule 1915.13 states:

> At any time after commencement of the [custody] action, the court may on application or its own motion grant appropriate interim or special relief. The relief may include, but is not limited to, the award of temporary legal or physical custody; the issuance of appropriate process directing that a child or a party or person having physical custody of a child be brought before the court; and a direction that a person post security to appear with the child when directed by the court or to comply with any order of the court.

Pa.R.C.P. 1915.13. We note that because the trial court's June 30, 2015 order disposed of Maternal Grandmother's custody complaint and all appeals from that order were exhausted, the language of Rule 1915.13 suggests that Maternal Grandmother may no longer have been eligible to seek relief under this Rule because she no longer had a pending custody action. No party has raised this issue and we therefore render no opinion with respect to it.

action." N.T., 3/28/16, at 2. The court responded that this "case was initiated in February of 2015. It does not appear that the motion was previously addressed; is that correct?" *Id.* at 2-3. Father's counsel noted that he was retained after the March hearing, briefly summarized the history of the case, and reiterated that Maternal Grandmother "doesn't have the standing requisite to continue at this time to bring this action." *Id.* at 3.

The court swore Maternal Grandmother in and began questioning her about the basis of her petition and whether she had standing under Section 5324 of the Domestic Relations Code, which provides:

> The following individuals may file an action under this chapter for any form of physical custody or legal custody:
>
>        \*    \*    \*
>
> (3) A grandparent of the child who is not in loco parentis to the child:
>
> > (i) whose relationship with the child began either with the consent of a parent of the child or under a court order;
> >
> > (ii) who assumes or is willing to assume responsibility for the child; and
> >
> > (iii) when one of the following conditions is met:
> >
> > > (A) the child has been determined to be a dependent child under 42 Pa.C.S. Ch. 63 (relating to juvenile matters);
> > >
> > > (B) the child is substantially at risk due to parental abuse, neglect, drug or alcohol abuse or incapacity; or

> (C) the child has, for a period of at least 12 consecutive months, resided with the grandparent, excluding brief temporary absences of the child from the home, and is removed from the home by the parents, in which case the action must be filed within six months after the removal of the child from the home.

23 Pa.C.S. § 5324. Maternal Grandmother contended, without objection by Father, that she fulfilled the requirement in Section 5324(3)(i), because her relationship with Child began under a court order, and that, with respect to Section 5324(3)(ii), she is willing to assume responsibility for the Child. N.T. at 5. She further contended that she had standing under Sections 5324(3)(iii)(B) and (iii)(C), but, with respect to Subsection (C), the court pointed out that Maternal Grandmother's petition was filed on January 7, 2016, more than six months after Child was removed from her custody on June 30, 2016.

In addition to testifying, Maternal Grandmother was permitted to introduce evidence that she contended would establish that Child was at risk under Section 5324(3)(iii)(B). The trial court instructed Maternal Grandmother to give a copy of her proposed "evidence packet" and exhibits to Father's counsel. N.T., 3/28/16, at 8. Father's counsel objected to her "Exhibit A," a document dated March 10, 2015, that was considered at the June 30, 2015 dependency hearing. The court said that Maternal Grandmother could not rely on evidence "approximately one year old" to establish the child was presently at risk. *Id.* at 9. Maternal Grandmother

countered that "just that document" was dated March 10th, that some of the other documents "barely exceed" twelve months' old, and the majority of her documents "are within the 12-month period." *Id.* at 9-10. She claimed she was unable to present that evidence at the June 30, 2015 hearing. Maternal Grandmother conceded that she did not have any evidence more recent than July 2015. *Id.* at 11-12. In response to Maternal Grandmother's attempt "to get this evidence viewed and get the truth out there," N.T., 3/28/16, at 13, the court then stated:

> And unfortunately. I don't have the ability to do that. It is not appropriate for the custody court to review a matter that the dependency court, in other words, Judge Krumenacker in the Children and Youth Services realm has determined. You don't get two bites at the apple that way and the only way[s] you can enter this courtroom as a grandparent are by the means that I explained to you, and unfortunately, you don't meet those tests for standing at this time.

*Id.* at 13-14. In sum, the trial court did not admit Maternal Grandmother's evidence both because it was not sufficiently recent (and therefore did not tend to establish Child was currently at risk) and because her evidence improperly sought reconsideration of a dependency ruling with which she disagreed.

The court entered an order on the same day as the hearing that dismissed Maternal Grandmother's Petition for Special Relief with prejudice for lack of standing. In its decision, the court made the following findings of fact:

(1) [Maternal Grandmother] is the minor child's maternal grandmother.

(2) Maternal Grandmother's relationship with the child began with the consent of one or both of the parents.

(3) On March 19, 2015, [the trial court] awarded custody of the minor child to Maternal Grandmother when Mother and Father each failed a court-administered drug test. The [trial court] referred the case to [CYS] for investigation.

(4) On June 30, 20[15], CYS returned custody of the minor child to Father.

(5) Maternal Grandmother asserts that the minor child is at risk because, *inter alia*, Mother and Father use illegal drugs. Maternal Grandmother acknowledges that she has no current evidence to substantiate her claims.

(6) Maternal Grandmother does not stand *in loco parentis* to the child.

(7) Maternal Grandmother is willing to assume responsibility for the child.

(8) The child has not been determined to be a dependent child under 42 Pa.C.S. Ch. 63.

(9) The child is not substantially at risk due to parental abuse, neglect, drug or alcohol abuse, or incapacity.

(10) The child has not resided with Maternal Grandmother for a period of 12 consecutive months.

Trial Ct. Op., 3/28/16, at 1-2 (citation omitted).

On April 1, 2016, Maternal Grandmother Filed a "Motion for Exceptions

/Reconsideration of Dismissal of Special Relief Petition - March 28, 2016

Order."[3]  On April 6, 2016, the trial court scheduled oral argument on the motion for May 10, 2016; the court's order stated that evidence would not be accepted and only oral argument would be entertained.  Order, 4/6/16.  On April 26, 2016, Maternal Grandmother filed her Notice of Appeal.  On May 11, 2016, the trial court granted Maternal Grandmother's request to continue the oral argument on the motion for reconsideration because the appeal would deprive the trial court of jurisdiction to act on the motion.  **See** Trial Ct. Op., 6/29/16, at 3 (explaining that court granted the motion "because the trial court lacks jurisdiction over the case while Maternal Grandmother's appeal to the Superior Court is pending").[4]

On appeal, Maternal Grandmother presents the following issues:

> 1. Was [M]aternal [G]randmother . . . improperly disallowed the opportunity to make a record supporting her Petition?
>
> 2. Was [M]aternal [G]randmother's Petition adequate to support claim for relief?

---

[3] Maternal Grandmother's motion for reconsideration asserted that her January 7, 2016 Petition for Special Relief (which she erroneously contended was filed on December 31, 2015), had been based on 23 Pa.C.S. § 5324 only, even though it said it sought clarification of Child's "custody and visitation provisions" (**see** Pet., 1/7/16, at 1-2).  Maternal Grandmother's Mot. for Reconsideration, 4/1/16, at 1.  Her motion attached the exhibits that the trial court had refused to admit.

[4] Under Appellate Rule 1701(b)(3)(ii), the court would have had authority to grant reconsideration up to May 26, 2016, but not thereafter.  Because the trial court did not grant reconsideration within the appeal period, Maternal Grandmother's appeal is properly before this Court. **See M.O. v. J.T.R.**, 85 A.3d 1058, 1060 n.1 (Pa. Super. 2014).

3. Were [M]aternal [G]randmother's efforts to seek relief, obstructed by the record keeping practices of the Cambria County Prothonotary office?

4. Was the paramount interest of establishing the best interest of the child satisfied by the due process afforded to the Petitioner in this matter?

Maternal Grandmother's Brief, at 7 (unpaginated).

"The issue of whether the statute confers standing upon a grandparent to seek custody and/or visitation is purely one of law, over which our review is plenary." **R.M. v. Baxter ex rel. T.M.**, 777 A.2d 446, 449 (Pa. 2001) (construing statutory predecessor 23 Pa.C.S. § 5324, which governs when a grandparent may have standing to pursue custody).

> [W]hen our legislature has designated who may bring an action under a particular statute, a court does not have jurisdiction over the action unless the party bringing the action has standing. . . .
>
> > [W]hen a statute creates a cause of action and designates who may sue, the issue of standing becomes interwoven with that of subject matter jurisdiction. Standing then becomes a jurisdictional prerequisite to an action. It is well-settled that the question of subject matter jurisdiction may be raised at any time, by any party . . . .

**K.B. II v. C.B.F.**, 833 A.2d 767, 774 (Pa. Super. 2003) (citations and emphasis omitted).

We summarize Maternal Grandmother's arguments for all of her issues. She contends that the trial court ruled on her petition before she could testify and introduce evidence that would have established her standing. Maternal Grandmother's Brief at 9 (unpaginated). Maternal

- 11 -

Grandmother asserts that because she acted as the parent of Child for more than twelve months, she has standing. The trial court, Maternal Grandmother maintains, prevented her from creating a record on the "particulars outlined in [her] allegations" in the petition. *Id.* at 9-10 (unpaginated). The remainder of her brief argues that she is entitled to "liberal visitation" with Child. *Id.* at 10.[5] Her supplemental appellate brief reiterates her belief that she was prevented from testifying before the court dismissed her petition. Maternal Grandmother's Supplemental Brief at 1 (unpaginated). In sum, Maternal Grandmother's arguments are focused on whether she had standing and whether the trial court's procedures improperly obstructed her right to prove she had standing.[6]

After careful review of the record, the parties' briefs, and the trial court's decision, we affirm on the basis of the trial court's opinions. *See* Trial Ct. Op., 6/29/16, at 3-7 (holding that (1) a hearing was held at which Maternal Grandmother testified and was permitted to introduce evidence; (2) Subsection 5324(3)(iii)(A) did not apply; (3) Maternal Grandmother had

_____

[5] Maternal Grandmother also apparently argues that (1) the prothonotary erred by returning paperwork for improper formatting, and (2) there was a broad violation of due process. Maternal Grandmother's Brief at 8 (unpaginated). Maternal Grandmother has waived both arguments as they are undeveloped in her brief. *Commonwealth v. Blango*, 150 A.3d 45, 48 (Pa. Super. 2016) (noting, "claims for which arguments are undeveloped are waived").

[6] Maternal Grandmother does not contend that it was error for the trial court to decide the case on the basis of standing under Section 5324, even though she filed her petition under Rule 1915.13.

- 12 -

no current evidence that Child was currently at risk under subsection (B); and (4) Maternal Grandmother could not establish standing under subsection (C), as Child had not resided with Maternal Grandmother for twelve consecutive months and Maternal Grandmother did not file a petition within six months).

Maternal Grandmother's brief suggests a mistaken belief that the court improperly prevented her from testifying and introducing evidence. To the contrary, the trial court's February 25, 2016 order that scheduled the hearing on Maternal Grandmother's petition did not prohibit testimony or the introduction of evidence. Accordingly, at the hearing, Maternal Grandmother testified and sought to introduce evidence over the objection of Father's counsel. The trial court properly sustained that objection, but the court's ruling was not an improper bar against submission of evidence by Maternal Grandmother. The court's order regarding Maternal Grandmother's motion for **reconsideration** did state that only oral arguments would be permitted, Order, 4/6/16 (scheduling hearing on Appellant's reconsideration motion for May 10, 2016), but that is because such motions are not evidentiary proceedings.

Maternal Grandmother also complains that she has been deprived of visitation rights. Maternal Grandmother did not institute the present proceeding by filing a custody complaint under Sections 5324 or 5325 of the Domestic Relations Code, but instead by filing a petition under Rule 1915.13,

which is intended "as a means to bring about emergency relief." ***Steele v. Steele***, 545 A.2d 376, 378 (Pa. Super. 1988). "[T]he appropriate manner to bring about a change in a custody/visitation Order is by petition for modification, which would follow, generally[,] the procedure under Pa.R.C.P. 1915.3," which addresses commencement of a custody complaint. ***Id.***

Instead of dismissing the Rule 1915.13 petition, the trial court opted — with Maternal Grandmother's acquiescence and no objection by Father — to construe her petition as a complaint for custody under Section 5324, and it then correctly held that Maternal Grandmother lacked standing under that provision. When Maternal Grandmother's inquired further about visitation at the March 28, 2016 hearing, the trial court told her she would have to bring "a different action" in which she would seek "partial physical custody." N.T., 3/28/16, at 14.[7] We understand the court to have been referring to the fact

---

[7] The relevant portion of the hearing transcript includes this exchange:

> [Maternal Grandmother]: So I don't even qualify for visitation?
>
> The court: That is a different action. You are suing for a form of physical custody and this is what you have to prove. If you want to request partial physical custody, you would meet that standing, but that is a separate action.
>
> [Maternal Grandmother]: Your Honor, I have not seen my grandchild in eight months. . . . I just want any access to this child and it will not be given to me unless you order it. There is no—

*(Footnote Continued Next Page)*

that a grandparent who lacks standing under Section 5324 may still seek partial physical custody (that is, visitation)[8] under Section 5325 of the Code, which states:

---
*(Footnote Continued)*

> The court: And I don't have the authority to order it at this time, and again, it is clear that you are very sincere in your desire for what is best, but the rules and the laws are written a certain way, because parents are presumed, unless otherwise determined by a court of law, to have the child's best interests at heart and the rules were established to prevent third parties, even blood relatives, from interfering in the family relationships.
>
> And, again, there are methods by which you may be able to proceed for some type of partial physical custody. I can't make a determination today, because that is not what you are here for, but I can say that I am going to grant the objection to the standing and no further action will be required.

N.T., 3/28/16, at 14-15.

[8] Section 5322(b) of the Code, 23 Pa.C.S. § 5322(b), states:

> **(b) Other law.—**In a statutory provision other than in this chapter, when the term "visitation" is used in reference to child custody, the term may be construed to mean:
>
> (1) partial physical custody;
>
> (2) shared physical custody; or
>
> (3) supervised physical custody.

23 Pa.C.S. § 5322(b). Although Chapter 53 eliminated the term "visitation," other statutes and rules still reference "visitation". *See, e.g.*, Pa.R.C.P. 1920.1 (defining "'custody' [as including] partial custody and visitation"). This Court has observed that Section 5325 explicitly permits a grandparent to seek "visitation." *R.M. v. J.S.*, 20 A.3d 496, 510 n.12 (Pa. Super. 2011).

> In addition to situations set forth in section 5324 (relating to standing for any form of physical custody or legal custody), grandparents and great-grandparents may file an action under this chapter for partial physical custody or supervised physical custody in the following situations:
>
> > (1) where the parent of the child is deceased, a parent or grandparent of the deceased parent may file an action under this section;
> >
> > (2) where the parents of the child . . . have commenced and continued a proceeding to dissolve their marriage; or
> >
> > (3) when the child has, for a period of at least 12 consecutive months, resided with the grandparent or great-grandparent, excluding brief temporary absences of the child from the home, and is removed from the home by the parents, an action must be filed within six months after the removal of the child from the home.

23 Pa.C.S. § 5325.[9] The trial court told Maternal Grandmother at the hearing that she "would meet that standing," N.T. 3/28/16, at 14, but did not otherwise explain this statement. We express no view regarding whether Maternal Grandmother may be eligible for standing under Section 5325, as that issue is not currently before us. We conclude, however, that the trial court did not err in denying Maternal Grandmother visitation rights (that is, partial physical custody) under Section 5324, without prejudice to Maternal Grandmother's right to seek visitation under Section 5325 in an appropriate separate proceeding.

_____

[9] We have omitted from this quotation a portion of Section 5325(2) that our Supreme Court held unconstitutional in **D.P. v. G.J.P.**, 146 A.3d 204, 217 (Pa. 2016).

In sum, having discerned no error of law, we affirm. ***See R.M.***, 777 A.2d at 449. The parties are instructed to include the June 29, 2016 and September 2, 2015 trial court opinions in any filings referencing this Court's decision.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/10/2017

IN THE COURT OF COMMON PLEAS OF CAMBRIA COUNTY, PENNSYLVANIA,
JUVENILE DIVISION

|  |  |
|---|---|
| IN THE MATTER OF: | * |
| | * |
| | * |
| S.L., DOB 02/03/2012, | * CP-11-DP-0000084-2015 |
| | * |
| Appeal of A.L., Maternal Grandmother, and | * Opinion Pursuant to Rule of Appellate |
| M.A., Mother | * Procedure 1925(a)(2) |

## OPINION PURSUANT TO RULE OF APPELLATE

## PROCEDURE 1925 (a)(2)

**Krumenacker, J.:** A.L., maternal grandmother (Grandmother), and M.A., mother (Mother),

the appellants herein, appeal from this court's July 22, 2015, Order which, *inter alia*,

determined that S.L. was not a dependant child, removed her from the care of Grandmother,

returned her to the care and custody of St.L, her father (Father), and terminated services.

Order of 7/22/15. At the initial adjudication hearing held June 30, 2015, Father was

represented by Michael Crum (Crum), Esquire, Mother was unrepresented and not present,

and Grandmother was represented by Michael Filia (Filia), Esquire.

On July 27, 2015, Grandmother and Mother filed a timely Joint Notice of Appeal and

Concise Statement of Errors Complained of on Appeal (Concise Statement) pursuant to

Pennsylvania Rules of Appellate Procedure 905(a)(2) and 1925(a)(1). Pa.Rs.A.P. 905, 1925

(West 2015). The Concise Statement lists into thirty-seven separate matters that can be

grouped into three allegations of error. These allegations of error are:

1. Did the Court err in holding the June 30, 2015, adjudication hearing in violation of

   Mother's Due Process right as she did not have notice of the hearing?

2. Was the Court's decision that S.L. is not dependent and should be returned to her

   father correct?

3. Was counsel for Grandmother ineffective?

In essence Grandmother and Mother challenge the Court's determination that S.L. was not dependent and transferring custody of her to father. For the reasons discussed below the appeal should be dismissed and the Court's Order affirmed.

# PROCEDURAL BACKGROUND

On January 29, 2015, Grandmother filed a custody action at docket 0450-2015 alleging, *inter alia*, the parents were unable to care for S.L. due to drug issues. The Honorable Linda Rovder Fleming (Fleming) conducted a conference on March 16, 2015 with Grandmother represented by Filia and both Father and Mother were unrepresented. Judge Fleming on March 19, 2015, issued an Opinion and Interim Order finding, *inter alia*, that Mother and Father tested positive for illegal substances, that the safety of S.L. could not be assured in their care, directing Cambria County Children and Youth Service (CYS) to initiate an investigation to determine if S.L. was dependent, and granting Grandmother temporary Custody of S.L. Opinion and Interim Order of 3/19/14 at docket 0450-2015. The Interim Order also indicated that it was without prejudice to the power of CYS, more accurately the Juvenile Division of the Court, to make an order of custody after completition of the investigation. Id.

A hearing on the custody matter was scheduled before Domestic Relations Permanent Hearing Officer Paul J. Eckenrode (Eckenrode), Esquire for April 20, 2015. At that hearing Father was represented by Crum, Grandmother by Filia, and Mother was unrepresented, Following this hearing Eckenrode recommended, *inter alia*, that physical custody remain with Grandmother and these recommendations were adopted by Judge Fleming. Order of 4/24/14 at docket 0450-2015. Following the completion of the CYS investigation, an Initial

Adjudication hearing was held June 30, 2015, after which S.L. was deemed not dependent and returned to her father.

# FACTUAL BACKGROUND[1]

CYS initiated services to this family in 2013 to provide General Protective Services (GPS) and other assistance to Mother and Father who were young and new parents. Robin Alvarez-Plack (Alvarez-Plack) testified that she is the CYS caseworker assigned to this family and has been providing GPS for sometime. Alvarez-Plack testified that she meets with S.L. at least monthly, that prior to September 2014 those visits occurred at Father's and after that time they occurred at Grandmother's. Alvarez-Plack testified that S.L. in Father's care was outgoing, friendly, lively, had an increasing vocabulary, was developing problem solving skills, was a healthy eater, and generally on target. Alvarez-Plack testified that once custody shifted to Grandmother S.L. became increasingly timid, shy, unsure of herself, unwilling to speak openly with others, seemed withdrawn, and appeared to be regressing verbally, with her problem solving skills, and with her social skills.

Alvarez-Plack indicated that she has concerns with Grandmother due to her mental health, her lack of mental treatment over the years, failure to follow through with drug treatment, and failure to take her prescribe Suboxone and Vybrid as directed. Alvarez-Plack indicated that Grandmother had recently started mental health treatment after several years on non-treatment and that Grandmother told her she could not afford her medications. In addition Alvarez-Plack testified that since 2013, CYS received at least seven allegations of sexual abuse related to S.L., some of these from Grandmother, that each report was investigated, including at least one medical examination, and that each was determined as unfounded.

---

[1] This summary is distilled from the transcripts without citation to specific portions of the record.

Despite this Grandmother continues to question S.L. about sexual abuse and to believe that abuse is occurring which concerns the agency.

Alvarez-Plack testified that she made multiple unsuccessful attempts to contact Mother and that notice of the hearing was mailed to her last known address but that she was not present. Alvarez-Plack indicated that Mother had an active bench warrant for her arrest for unpaid costs and fines, was not compliant with drug treatment, and not compliant with services.

Relative to Father, Alvarez-Plack testified that he had not tested positive for drugs prior to the March 19th test, that she has drug tested him multiple times since March, that all tests were negative, that he lived with his paramour and her two sons, that the home was appropriate, that the home was adequate for S.L., and that he had custody of S.L. until August 2014. In August 2014 Father allowed Grandmother to take S.L. for a weekend visit after which Grandmother did not return the child to Father.[2] Alvarez-Plack testified that the agency had no concerns with Father, recommended giving custody of S.L. to him, and recommended finding S.L. not dependent. Finally, when questioned by the Court Alvarez-Plack testified that she was subpoenaed to attend the April 24th custody hearing but that she did not testify.

Dennis Kashurba (Kashurba), a licensed psychologist, testified that he performed an evaluation of Father on June 15, 2015, and that he found no areas of concern. Kashurba testified that based on his evaluation there was no reason Father could not care for S.L. if she were returned to his care. Kashurba did recommend ongoing caseworker services to assess compliance and parenting skills.

---

[2] There was no testimony why Father did not seek legal aid in recovering S.L. from Grandmother.

Kashurba testified that he evaluated Grandmother on August 16, 2006, and at that time diagnosed her with, *inter alia*, major depressive disorder and opiate dependency and that he had recommended ongoing mental health and drug treatment for her. He indicated that he reviewed a current evaluation of Grandmother performed by Family Behavioral Resources (FBR) that showed a diagnosis of major depressive disorder and opiate dependency. Based on the review of the current evaluation and his prior evaluation Kashurba indicated that Grandmother had the same issues now as in 2006 and that she required ongoing mental health treatment, drug treatment, and psychiatric follow-up for medication checks.

Grandmother testified that she began mental health treatment with FBR in March 2015, she attended counseling every two weeks, she was unable to afford Suboxone, se was therefore weaning herself from it but not on the advice of her doctor, and that she did not agree with the recommendations. Grandmother further testified that Father and his paramour were using illegal drugs, lying, and manipulating everyone. Grandmother testified that she believed Alvarez-Plack was not honest with her, was lying, and was unwilling to listen to any of Grandmother's concerns that S.L. was abused by Father and/or his paramour. Grandmother testified that while in Father's care S.L. sustained injuries, a biting incident with a child of Father's paramour and a shoulder injury, that she believed were child abuse but that CYS had told here were investigated and determined to be accidental.

Dr. Shannon Nikoloff (Nikoloff) testified that she conducted a psychological evaluation on S.L. on May 26, 2015 to determine if she suffered any abuse. Nikoloff testified that all information she obtained was from either Grandmother or S.L. during play therapy. Nikoloff testified that based on her evaluation S.L. had suffered some emotional or mental abuse, that she could not rule sexual abuse, and there was a possibility of physical abuse most

likely by a man. She testified that she "was not a man hating psychologist, but [S.L.] is hiding from men." N.T. 6/30/15 p. 59. Nikoloff indicated she concluded this because during play therapy S.L. would frequently have the dolls hide, no boy dolls were allowed in the dollhouse, and the police came and took a boy doll away.

Upon conclusion of the hearing the Court entered a verbal order that, *inter alia*, found: S.L. was not dependent; that Father was ready and able to provide for her health, safety and welfare; that Nikoloff's testimony was not credible in light of all the other evidence and reports; that Grandmother had not complied with mental treatment over the years and that her mental health needs to be re-evaluated; that the custody order was entered without sufficient basis as the hearing officer did not hear testimony from Alvarez-Plack or any CYS caseworker; returned S.L. to her Father; and directed that if Grandmother wished visitation she would need to proceed through the Domestic Relations Division.

## DISCUSSION

I.  Did the Court err in holding the June 30, 2015, review hearing in violation of Mother's Due Process right as she did not have notice of the hearing?

Grandmother and Mother's first allegation of error is that the Court erred in holding the hearing despite Mother having not received notice of the hearing. Testimony at the hearing established that Mother's last known address was █████████████████ ███, Pennsylvania, an address shared with Grandmother. Both Grandmother and Mother's hearing notices were mailed to this address. The Court also observes that this address is the same listed on the Notice of Appeal for both Grandmother and Mother. CYS has a clear duty to provide notice to a parent relating to any court hearing concerning their child and a parent has a due process right to be notified. 42 Pa.C.S. § 6336.1 (West 2015).

Page 6 of 14

"The core of due process is the right to notice and a meaningful opportunity to be heard." LaChance v. Erickson, 522 U.S. 262, 266, 118 S.Ct. 753, 139 L.Ed.2d 695 (1998). Due process requires that the means employed to provide notice be such as one "desirous of actually informing" the person would reasonably adopt to accomplish notice. Jones v. Flowers, 547 U.S. 220, 229, 126 S.Ct. 1708, 164 L.Ed.2d 415 (2006) (quoting Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 315, 70 S.Ct. 652, 94 L.Ed. 865 (1950)).

The record in this matter reflects that a U.S. Postal Service Certified Mail Return Receipt Card, frequently called a green card, was returned indicating that notice of the hearing was undeliverable and not able to be forwarded to Mother. However, Grandmother's green card was received back but signed for by another household resident. CYS sent notice of the hearing to Mother's last known address, one she shared with Grandmother, and that the notice was returned as undeliverable and unable to be forwarded. CYS was not notified by either Grandmother or Mother that Mother had changed residences and a person desirous of actually informing the person would reasonably seek to do so at the last known residence. Further, Grandmother did receive notice of the hearing and presumably could have shared this information with Mother had she chosen to do so.

Alvarez-Plack testified that she made several attempts to locate and speak with Mother but was unsuccessful in locating her. N.T. 6/30/15 p.10. Further, Alvarez-Plack testified that Mother had an active bench warrant for her arrest, id., and the Court believes that this may have influenced her decision to ignore the hearing notice and not attend the hearing rather than risk being arrested on that warrant should she appear.

As Mother was an absentee and non-custodial parent the agency was not required to engage in reasonable efforts to locate her. In re J.C., 412 Pa. Super. 369, 603 A.2d 627 (1992)

(county need not make "reasonable" efforts to locate absent, non-custodial parent whose whereabouts are unknown prior to obtaining finding of dependency). Since CYS met the standard set forth in Jones to employ means to provide notice be such as one desirous of actually informing the person would reasonably adopt to accomplish notice, sending notice to the last known residence and caseworker contacts, there was no violation of Mother's due process rights. See, Scott v. Wickard, 2009 WL 256547 (M.D. Pa. Feb. 3, 2009)(Pennsylvania county CYS agency did not violate a father's procedural due process rights; agency attempted to notify him of a child dependency hearing via means that a reasonable person desirous of actually informing another thereof would have employed, including use of phonebook and internet searches). Accordingly, there is no merit to this issue.

**II.      Was the Court's decision that S.L. is not dependent and should be returned to her father correct?**

The vast remainder of the issues raised challenge, in various ways, whether the Court's determination that S.L. was not dependent and should be returned to her non-custodial father was correct. A review of twenty-three of these issues reveals that they involve allegations that witnesses committed perjury, that certain facts were distorted or inaccurate, that avenues of questioning were not explored, that certain items of evidence were not presented, that various CYS employees lack integrity, and assertions that CYS employees misled Department of Human Services (DHS) investigators.

It is well settled that "[t]he weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses." Commonwealth v. Simmons, 541 Pa. 211, 229, 662 A.2d 621, 630 (1995). This principal applies equally where a judge sits as fact finder. Commonwealth v. Davis, 491 Pa.

Page 8 of 14

363, 372, 421 A.2d 179, 183 (1980). When reviewing for sufficiency or weight of the evidence, a court may not substitute its judgment for that of the fact-finder; if the record contains support for the verdict, it may not be disturbed. Commonwealth v. Murdick, 510 Pa. 305, 308, 507 A.2d 1212, 1213 (1986). A court may not reverse the fact finders determination unless it is "so contrary to evidence as to shock one's sense of justice." Simmons, 541 Pa. at 229, 662 A.2d at 630. Where the court is sitting as fact finder a challenge to the weight of the evidence requires a showing of an abuse of discretion.

In reviewing a decision for abuse of discretion, appellate courts are bound by the facts as found by the trial court unless they are not supported in the record. *In re:* A.P., 728 A.2d 375, 378 (Pa. Super. 1999) (citation omitted). Further, our Superior Court has consistently held that

> Our scope of review, accordingly, is of the broadest possible nature. It is this Court's responsibility to ensure that the record represents a comprehensive inquiry and that the hearing judge has applied the appropriate legal principles to that record. Nevertheless, we accord great weight to the court's fact-finding function because the court is in the best position to observe and rule on the credibility of the parties and witnesses.

*In re:* E.P., J.P. & A.P., 841 A.2d 128, 131 (Pa. Super. 2003) (quoting *In re:* R.W.J., 826 A.2d 10, 12 (Pa. Super. 2003)). An abuse of discretion is not merely an error in judgment but exists only when the trial court has rendered a judgment that is manifestly unreasonable, arbitrary, or capricious, or where the court has failed to apply the law or was motivated by partiality, prejudice, bias, or ill will. Harman v. Borah, 562 Pa. 455, 756 A.2d 1116 (2000). See also, Van Dine v. Gyuriska, 552 Pa. 122, 713 A.2d 1104 (1998); Rebert v. Rebert, 757 A.2d 981 (Pa. Super. 2000).

For a decision to be against the weight of the evidence it must be shown that the evidence relied on to reach the decision was so inherently improbable or at variance with the

admitted or proven facts, or with ordinary experience, that it resulted in a decision that is shocking to the court's sense of justice. Thomas v. E.B. Jermyn Lodge No. 2, 693 A.2d 974 (Pa. Super. 1997). While an appellate court will review the evidence, determinations pertaining to the credibility of witnesses and the weight to assign evidence are matters within exclusive province of the fact finder and may not be disturbed by the appellate court. See, Weir by Gasper v. Estate of Ciao, 551 Pa. 491, 556 A.2d 819 (1989).

The fundamental purpose of proceedings under the Juvenile Act is to preserve the unity of the family. 42 Pa.C.S. § 6301(b)(1) (West 2105). The care and protection of children are to be achieved in a family environment whenever possible. 42 Pa.C.S. § 6301(b)(3) (West 2105). It is well settled that a child whose non-custodial parent is ready, willing, and able to provide adequate care to child cannot be found dependent unless one of the remaining basis for dependency defined in the Juvenile Act is proven. See, 42 Pa.C.S. §6302 (West 2015); In re M.L., 562 Pa. 646, 757 A.2d 849 (2000); In re K.A.D., 779 A.2d 540 (Pa. Super. 2001).

In this matter the evidence established that Father was ready, willing, and able to take custody of S.L. Further, after conducting an investigation into him CYS believed he was able to provide adequate care for S.L., that it was in her best interests to be placed in Father's care, and that no services were required. Since there was a non-custodial parent who was ready, willing, and able to provide adequate care to S.L. she could not be found dependent unless one of the remaining basis for dependency defined in the Juvenile Act (Act) is proven. . See, 42 Pa.C.S. §6302 (West 2015); In re M.L., 562 Pa. 646, 757 A.2d 849 (2000); In re K.A.D., 779 A.2d 540 (Pa. Super. 2001). No other basis for dependency was alleged or proven and so S.L. could not be found dependent under these circumstances. Id.

Even if Grandmother had been an equally acceptable placement option the Act dictates a strong preference to keep families together and that bias would mandate return of S.L. to her father over any other person with the possible exception of her mother who in this case was not a suitable option. See, 42 Pa.C.S. §§ 6301(b)(3), 6351(f.1)(1) (West 2105); *In re L.J.*, 456 Pa. Super. 685, 695-96, 691 A.2d 520, 525 (1997) ("we conclude that, consistent with its concentration on the parent-child relationship, the Act's goal of "preserving family unity" refers, primarily, to sustaining the connection between children and their natural parents."). See also, 42 U.S.C.A. § 675(5)(C) (West 2015)(highest preference in permanency plan goals is reunification with parent). Hence the Court did not err in finding S.L. not dependent and returning her to her Father's care. *In re M.L.*, 562 Pa. 646, 757 A.2d 849 (2000) (child whose non-custodial parent is ready, willing, and able to provide adequate care to child cannot be found dependent; trial court had authority to transfer custody of child from mother to father in dependency proceeding, even though court found that child was not dependent). Accordingly, there is no merit to this issue.

### III. Was counsel for Grandmother ineffective?

Grandmother raises at least eleven issues related to the question of whether her counsel, attorney Filia, was ineffective at the initial adjudication hearing. It is well settled that parents are entitled not only to counsel in dependency proceedings but to effective counsel and that ineffectiveness of counsel is an available issue for appellate review from a finding of dependency. *In re S.M.*, 418 Pa. Super. 359, 614 A.2d 312 (1992); Matter of J.P., 393 Pa. Super. 1, 573 A.2d 1057 (1990). In S.M. our Superior Court explained that

> Under the criminal standard, in order to prevail on an ineffectiveness of counsel challenge, the appellant must show that she had a claim of arguable merit, that counsel handled the claim unprofessionally and that counsel's action caused her prejudice. We hold that in the context of a dependency

proceeding, before counsel can be deemed ineffective, under the above stated criminal standard, the appellant must make a *strong showing* of ineffectiveness of counsel. Under this heightened test the parent must come forward with evidence that indicates to a high degree of likelihood that but for an unprofessional error on the part of counsel, the child would not have been found to be dependent.

This heightened standard reflects the fact that a finding of dependency does not constitute a deprivation of liberty as does a sentence of imprisonment in a criminal setting. It also reflects the reality that it is of paramount importance in a child's life to have decisions about the child's status and placement be final, and not subject to challenge absent a strong showing of ineffectiveness on the part of counsel. As this court has noted, "[t]he state's interest in finality is unusually strong in child-custody disputes.... It is undisputed that children require secure, stable, long term, continuous relationships with their parents or foster parents. There is little that can be as detrimental to a child's sound development as uncertainty over whether he is to remain in his current 'home' under the care of his parents or foster parents, especially when such uncertainty is prolonged."

In light of these special considerations there is good reason for applying a more stringent test for measuring effectiveness of parents' counsel in dependency proceedings than for measuring the effectiveness of lawyers in most other settings. While identifying the unique needs of children, the heightened standard still provides protection for parents who have been inadequately served by their lawyer. It recognizes that parents must have effective counsel in order to vindicate their interest in raising their own children without the interference of the state. As Judge Montemuro stated in his Concurring Opinion in In the Matter of J.P., "Whether the end result involves incarceration, confinement in a mental hospital or youth treatment center, or as here the removal of one's child, the forces of opposition (the state) are always larger and better equipped, but are not necessarily either correct or just in their assessments."

S.M., 418 Pa. Super. 359, 366-68, 614 A.2d 312, 315-16 (citations omitted)(emphasis in original).

Here S.L. was found not dependent and returned to the care and custody of her father. The Court is uncertain if a claim of ineffectiveness can be raised under these circumstances as S.M. and J.P. involve children who were found dependent Nonetheless the Court will briefly address Grandmother's claims under the standard set forth in S.M. Under S.M.'s

heightened test Grandmother must come forward with evidence that indicates to a high degree of likelihood that but for an unprofessional error on the part of Filia, S.L. would not have been found to be not dependent and returned to Father. A review of Grandmother's allegations of ineffectiveness reveals that even if all are accepted as true none would have resulted in a different outcome.

As discussed above where there is a non-custodial parent who is ready, willing, and able to provide adequate care to a child that child cannot be found dependent, unless one of the remaining basis for dependency defined in the Act is proven, and the child should be placed in the care of that parent. See, 42 Pa.C.S. §6302 (West 2015); *In re* M.L., *supra*; In re K.A.D., *supra*. In the matter *sub judice* that Father was such a parent was established by clear and convincing evidence and none of the allegation against Filia relate to how he failed to establish that Father was not ready, willing, and able to provide adequate care for S.L. Instead the issues raised focus on questions of evidence not presented that was favorable to Grandmother, witness favorable to Grandmother not being called, and general allegations of ineffectiveness. Each of these issues focuses on matters related to whether Grandmother was an appropriate placement option. As discussed above whether Grandmother was an equally good option is not relevant where a ready, willing, and capable non-custodial parent existed to take custody of the child. Accordingly, there is not merit to this or any allegation of error.

The Court observes that this matter at its core is a custody dispute between Grandmother and Mother on one side and Father on the other. From a review of the record in this matter and the related domestic relations case it is clear that Grandmother and Mother are attempting to use CYS as another means to obtain custody of S.L. and will take any steps necessary to further that objective. In their "Conclusion" portion of the Concise Statement,

Grandmother and Mother recite a lengthy list of individuals they have contacted to "conduct a proper investigation" including CYS workers, the CYS director, various law enforcement agencies, DHS investigators, the Office of the Attorney General, the Cambria County District Attorney, and state Senator John Wozniak. Appellants would have this Court and the Superior Court believe that each of these individuals or entities failed to act accordingly in concluding that S.L.'s safety was insured and that remaining with her father was in her best interests. Such a conclusion would require the Courts to accept that all of these persons were engaged in a conspiracy of massive scale against the appellants and there exists no rational basis to conclude such a conspiracy exists.

The Court further notes that since this matter was decided and the appeal initiated Grandmother and/or Mother have joined a Facebook group called Social Worker of the Year, dedicated to slandering social workers nationwide. In addition Grandmother has posted various comments on her homepage making insulting, disparaging, and thinly veiled threats against Alvarez-Plack and others. Only recently has she changed her privacy settings making her comments available only to her friends. In addition Grandmother has threatened to reveal the addresses and names of the caseworkers, their family members, and other personal details. Also posted were video files of home visits by Alvarez-Plack, which included conversations between her and Grandmother.

As there is no merit to any allegation of error and for the reasons discussed herein, the appeal should be dismissed and the Court's Order of July 22, 2015, should be affirmed.

RESPECTFULLY SUBMITTED,

_____
Norman A. Krumenacker, III, Judge

September 2, 2015

IN THE COURT OF COMMON PLEAS OF CAMBRIA COUNTY, PENNSYLVANIA
CIVIL DIVISION

A.A.L.,                                                :        Trial Court No. 2015-450

                    Plaintiff,                         :        Superior Court No. 603 WDA 2016

            v.                                         :

S.J.L. and M.L.A.,                                     :

                    Defendants.                        :

**************

ATTORNEYS OF RECORD:

        For the Plaintiff:              PRO SE

        For the Defendants:            MICHAEL T. CRUM, ESQUIRE

*************

**STATEMENT IN SUPPORT OF ORDER PURSUANT TO
PENNSYLVANIA RULE OF APPELLATE PROCEDURE 1925(a)**

FLEMING, J., June 28, 2016.  Pursuant to Pennsylvania Rule of Appellate Procedure 1925(a), the trial court presents the following Statement in Support of its Order dated March 28, 2016:

On January 29, 2015, Plaintiff, A.A.L. ["Maternal Grandmother"], filed a Complaint for Custody of S.J.L. (born February 3, 2012) [the "child"] seeking primary physical custody from Defendants, S.J.L. ["Father"] and M.L.A. ["Mother"].  COMPLAINT FOR CUSTODY FILED FOR RECORD ON JAN. 29, 2015.  On the same day, Maternal Grandmother filed a "Petition for Emergency Custody Order" seeking immediate temporary legal and physical custody of the child.  PETITION FOR EMERGENCY CUSTODY ORDER FILED FOR RECORD ON JAN. 29, 2016, pgs. 1-12.  Maternal Grandmother alleged various instances of the child's mistreatment, as well as the parents' alleged mental health, alcohol abuse, and substance abuse.  *Id.*

Following a Hearing on Maternal Grandmother's "Petition for Emergency Custody Order," the trial court issued an Opinion and Interim Order dated March 19, 2015, stating:

[Father and Mother] having failed a court-administered drug test [on March 19, 2016], it is hereby ORDERED and DECREED that temporary physical custody of [the child] is hereby vested in [Maternal Grandmother] pending further Order. [Maternal Grandmother, Mother, and Father] shall have shared legal custody of the minor child. Cambria County Children and Youth Services ["CYS"] is DIRECTED to investigate this matter and to determine if the child is dependent under the Child Protective Services Act. This Order is without prejudice for Children and Youth Services to make another Order for custody after full investigation.

INTERIM ORDER DATED MAR. 19, 2015, pgs. 1-2.

On April 20, 2015, Hearing Officer Paul Eckenrode conducted a Custody Hearing and recommended that the parties share legal custody, that Maternal Grandmother maintain primary physical custody, and that Mother and Father have partial physical custody. INTERIM ORDER DATED APR. 24, 2015, ¶¶ 1, 10. The trial court executed the Hearing Officer's Recommended Interim Order on April 24, 2015. *Id.* On June 30, 2015, CYS returned custody of the child to Father. *See* OPINION DATED MAR. 28, 2016, FINDINGS OF FACT ¶ 4; NOTES OF TRANSCRIPT (MAY 18, 2016) ["N.T."], pgs. 3-5.

On January 7, 2016, Maternal Grandmother filed a Petition for Special Relief seeking clarification of "custody and visitation provisions." PETITION FOR SPECIAL RELIEF FILED FOR RECORD ON JAN. 7, 2016, pg. 2. On March 28, 2016, the trial court conducted a Hearing; and Father presented an oral motion arguing that Maternal Grandmother lacked standing. N.T., pg. 2. By Opinion and Order dated March 28, 2016, the trial court dismissed Maternal Grandmother's Petition for Special Relief with prejudice for lack of standing. OPINION AND ORDER DATED MAR, 28, 2016. On April 1, 2016, Maternal Grandmother filed a "Motion for Exceptions/Reconsideration of Dismissal of Special Relief Petition – March 28, 2016 Order," which the trial court scheduled for oral argument on May 10, 2016.

On April 26, 2016, Maternal Grandmother filed her Notice of Appeal. On May 6, 2016, Maternal Grandmother filed a "Petition to Proceed *In Forma Pauperis*," which the trial court granted on May 11, 2016. On May 10, 2016, Maternal Grandmother filed a Concise Statement[1] and two Applications for Order to Transcribe Record. On May 11, 2016, the trial

---

[1] *See D.M. v. V.B.*, 87 A.3d 323, 326-327 (Pa. Super. 2014) (finding no prejudice to either party where the appellant failed to file a timely concise statement but rectified the error).

2

court granted Maternal Grandmother's request to continue oral argument on her "Motion for Exceptions/Reconsideration of Dismissal of Special Relief Petition – March 28, 2016 Order" because the trial court lacks jurisdiction over the case while Maternal Grandmother's appeal to the Superior Court is pending. The special relief hearing transcript was lodged on May 18, 2016. *See* N.T., pgs. 1-17.

In its March 28, 2016 Opinion, the trial court made the following Findings of Facts:[2]

(1)    Maternal Grandmother is the minor child's maternal grandmother. N.T., pg. 4.[3]

(2)    Maternal Grandmother's relationship with the child began with the consent of one or both of the parents. N.T., pg. 5.

(3)    On March 19, 2015, [the trial court] awarded custody of the minor child to Maternal Grandmother when Mother and Father each failed a court-administered drug test. The [trial court] referred the case to [CYS] for investigation. N.T., pg. 4 (referencing INTERIM ORDER DATED MAR. 19, 2016).

(4)    On June 30, 201[5],[4] CYS returned custody of the minor child to Father. N.T., pgs. 3-5.

(5)    Maternal Grandmother asserts that the minor child is at risk because, *inter alia*, Mother and Father use illegal drugs. N.T., pg. 7. Maternal Grandmother acknowledges that she has no current evidence to substantiate her claims. N.T., pgs. 11-15.

(6)    Maternal Grandmother does not stand *in loco parentis* to the child. *See* N.T., pgs. 5-7.

(7)    Maternal Grandmother is willing to assume responsibility for the child. N.T., pgs. 5-6.

(8)    The child has not been determined to be a dependent child under 42 PA. C.S. Ch. 63. N.T., pgs. 5-6.

(9)    The child is not substantially at risk due to parental abuse, neglect, drug or alcohol abuse, or incapacity. N.T., pgs. 7-15.

(10)   The child has not resided with Maternal Grandmother for a period of 12 consecutive months. N.T., pgs. 5-7.

---

[2] The trial court's Findings of Fact are reproduced here in full with citations to the record added.
[3] The trial court notes a typographical error in the transcript, which states "paternal grandmother" instead of "maternal grandmother." *Compare* N.T., pg. 4 *with* OPINION DATED MAR. 28, 2016, FINDINGS OF FACT ¶ 1.
[4] The trial court corrected a typographical error from "2016" to "2015." *Compare* N.T., pgs. 3-5 *with* OPINION DATED MAR. 28, 2016, FINDINGS OF FACT ¶ 4.

3

OPINION DATED MAR. 28, 2016, FINDINGS OF FACT ¶¶ 1-10.

## DISCUSSION

### Purported Errors

On appeal, Material Grandmother claims the trial court erred as follows:

(1) Was [Maternal Grandmother] improperly disallowed the opportunity to make a record supporting her [Petition for Special Relief]?

(2) Was [Maternal Grandmother's Petition for Special Relief] adequate to support a claim for relief?

(3) Were [Maternal Grandmother's] efforts to seek relief obstructed by the record keeping practices of the Prothonotary Office?

(4) Was the paramount interest of establishing the best interest of the child satisfied by the due process afforded to [Maternal Grandmother] in this matter?

CONCISE STATEMENT FILED FOR RECORD ON MAY 10, 2016 ["CONCISE STATEMENT"], ¶¶ 1-4.

### Standard of Review

The Superior Court of Pennsylvania reviews a trial court's order as follows:

The scope of review of an appellate court reviewing a child custody order is of the broadest type; the appellate court is not bound by the deductions or inferences made by the trial court from its findings of fact, nor must the reviewing court accept a finding that has no competent evidence to support it. However, this broad scope of review does not vest in the reviewing court the duty or the privilege of making its own independent determination. Thus, an appellate court is empowered to determine whether the trial court's incontrovertible factual findings support its factual conclusions, but it may not interfere with those conclusions unless they are unreasonable in view of the trial court's factual findings, and thus, represent a gross abuse of discretion.

The concept of standing, an element of justiciability, is a fundamental one in our jurisprudence: no matter will be adjudicated by our courts unless it is brought by a party aggrieved in that his or her rights have been invaded or infringed by the matter complained of. The purpose of this rule is to ensure that cases are presented to the court by one having a genuine, and not merely a theoretical, interest in the matter. Thus the traditional test for standing is that the proponent of the action must have a direct, substantial and immediate interest in the matter at hand.

4

Moreover[, in] the area of child custody, principles of standing have been applied with particular scrupulousness because they serve a dual purpose: not only to protect the interest of the court system by assuring that actions are litigated by appropriate parties, but also to prevent intrusion into the protected domain of the family by those who are merely strangers, however well-meaning.

*D.G. v. D.B.*, 91 A.3d 706, 707-708 (Pa. Super. 2014) (citation, brackets, quotation marks, and indentations omitted).

## Legal Analysis

Pursuant to Section 5324 of the Pennsylvania Child Custody Statute, the following individuals have standing to file an action for any form of physical or legal custody:

(1) A parent of the child.

(2) A person who stands *in loco parentis* to the child.

(3) A grandparent of the child who is not *in loco parentis* to the child:

> (i) whose relationship with the child began either with the consent of a parent of the child or under a court order;

> (ii) who assumes or is willing to assume responsibility for the child; and

> (iii) when one of the following conditions is met:

>> (a) the child has been determined to be a dependent child under 42 PA. C.S. Ch. 63 (relating to juvenile matters);

>> (b) the child is substantially at risk due to parental abuse, neglect, drug or alcohol abuse, or incapacity; or

>> (c) the child has for a period of a least 12 consecutive months resided with the grandparent, excluding brief temporary absences of the child from the home, and is removed from the home by the parents, in which case the action must be filed within six months after the removal of the child from the home.

23 PA. C.S. § 5324.

In this case, Maternal Grandmother lacks standing to pursue an action for custody under Section 5324. Maternal Grandmother acknowledges that she is not the child's parent and that she does not currently stand *in loco parentis* to the child to constitute standing under Section 5324(1) or (2). N.T., pg. 4. Thus, Maternal Grandmother could only have standing as a grandparent who meets the requirements of Section 5324(3)(iii). First, the trial court

5

acknowledged that Section 5324(3)(iii)(a) regarding juvenile delinquency proceedings did not apply to this matter. N.T., pgs. 5-6.

Second, Maternal Grandmother alleged that "the child is substantially at risk due to parental abuse, neglect, drug or alcohol abuse, or incapacity" under Section 5324(3)(iii)(b). N.T., pg. 7. The trial court explained to Maternal Grandmother that she must "show that the child is currently at risk, so, [the trial court could not] look at evidence that is approximately one year old." N.T., pgs. 9-10. Nonetheless, Maternal Grandmother attempted to introduce evidence she failed to present at a CYS Hearing on June 30, 2015, as well as other evidence she failed to raise at an emergency custody hearing on March 19, 2015. *See* N.T., pgs. 9-14.

Regarding current risk to the child, Maternal Grandmother testified that she has "not been able to see her" for "the past eight months" and she did not "have anything from July [of 2015] forward." N.T., pgs. 11-12. Thus, Maternal Grandmother relied on eight-month old allegations and failed to submit evidence of *current* risk to the child. Accordingly, the trial court concluded that Maternal Grandmother lacked standing under Section 5324(3)(iii)(b). *See D.G. v. D.B.*, 91 A.3d 706, 712-713 (Pa. Super. 2014) (noting that "the record is not developed enough to indicate that Mother has ongoing drug or alcohol problems" where Mother testified she had been sober for three years). *See also R.M. v. Baxter*, 777 A.2d 446, 448-449 (Pa. 2001) (dismissing the grandmother's petition for lack of standing and "reasoning that the child was no longer at risk because the child services agency removed him from the home and placed him with foster parents").

Lastly, the child did not reside with Maternal Grandmother for 12 consecutive months under Section 5324(3)(iii)(c). N.T., pg. 6. Here, the child resided with Maternal Grandmother from the date of the trial court's Interim Order on March 19, 2015 until CYS returned the child to Father on June 30, 2015. INTERIM ORDER DATED MAR. 19, 2016; N.T., pgs. 3-5. Maternal Grandmother filed her Petition for Special Relief in this action on January 7, 2016, just over six months after the removal of the child from the home. N.T., pg. 6 (referencing PETITION FOR SPECIAL RELIEF FILED FOR RECORD ON JAN. 7, 2016). Thus, the trial court correctly concluded that Maternal Grandmother did not meet the requirements of Section 5324(3)(iii)(c).

6

Therefore, the trial court dismissed Maternal Grandmother's Petition for Special Relief for lack of standing under Section 5324.

Additionally, the trial court notes that a grandparent's standing under the Pennsylvania Child Custody Statute is a prerequisite to the trial court's jurisdiction over a matter. *See K.B. II v. C.B.F.*, 833 A.2d 767 (Pa. Super. 2003). In light of the foregoing conclusion that Maternal Grandmother lacked standing, the trial court consequently lacks jurisdiction over the merits of the case. Therefore, any purported errors regarding the merits of this case raised by Maternal Grandmother on appeal will not be addressed by the trial court.

## CONCLUSION

For the reasons set forth above, Petitioner's appeal should be dismissed and the trial court's Order dated March 28, 2016 should be affirmed.

RESPECTFULLY SUBMITTED,

_Linda Rovder Fleming_
Linda Rovder Fleming, J.

7